IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHARLES COX, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 2:22-CV-2420-JAR-ADM |
| LABOR SOURCE, LLC d/b/a ONE SOURCE LABOR & STAFFING, | |
| Defendant. | |

## MEMORANDUM AND ORDER

Plaintiff Charles Cox brings this putative collective action under the Fair Labor Standards Act ("FLSA"), alleging that Defendant Labor Source, LLC d/b/a ("Labor Source") willfully failed to pay its manual laborers minimum wage and overtime compensation. Specifically, Plaintiff alleges that Defendant underreported employees' work hours, improperly deducted expenses from employees' wages, and failed to pay employees for travel time.

This matter is before the Court on Plaintiff's Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) (Doc. 26). For the reasons explained below, the Court grants Plaintiff's motion to conditionally certify a collective action, but limits the scope of the collective action to current and former employees. The Court authorizes notice to be sent to putative plaintiffs after Plaintiff modifies his proposed notice, confers with Defendant about the specific items below, and files a revised joint notice and consent form in compliance with this Order.

## I.       Legal Standard

An action under the FLSA may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[1] Unlike a class action under Fed. R. Civ. P. 23, to participate in a FLSA collective action, all plaintiffs must "consent in writing to become such a part," and each consent must be "filed in the court in which such action is brought."[2]

The court may certify an opt-in collective action so long as the aggrieved employees are similarly situated.[3]  Section 216(b) does not define "similarly situated," but the Tenth Circuit has approved an *ad hoc* case-by-case basis for determining whether employees are "similarly situated" for purposes of § 216(b).[4]  This involves a two-step inquiry.[5]  The first step occurs at the "notice stage" of the proceedings.  Here, the court determines if certification is proper for the purpose of sending notice of the action to potential collective action members.[6]  At this stage, the court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."[7]  This standard is lenient and typically results in conditional certification.[8]  In reviewing a motion for conditional certification, "the court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs'

---

[1] 29 U.S.C. § 216(b).

[2] *Id.*

[3] *Id.*

[4] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001).

[5] *Id.* at 1105.

[6] *Id.* at 1102.

[7] *Id.* (alterations omitted) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)); *see also Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1001 (D. Kan. 2018) (citing *Thiessen*, 267 F.3d at 1102).

[8] *Blair*, 309 F. Supp. 3d at 1001 (citing *Thiessen*, 267 F.3d at 1103).

claims."[9]  Generally, courts in this district have limited the scope of their review on a motion for conditional certification to the allegations in the plaintiff's complaint and supporting affidavits.[10]

The second step—requiring the court to apply a stricter standard to ensure that plaintiffs are actually similarly situated—comes after discovery is complete and is usually prompted by defendants filing a motion to decertify.[11]

## II.    Background

Because Plaintiff's motion is brought at the notice stage of conditional certification, the Court recites the following allegations drawn from Plaintiff's Complaint,[12] Plaintiff and opt-in Plaintiffs' Declarations,[13] and Defendant's Declaration from Labor Source's Chief Operating Officer.[14]

Defendant Labor Source is a staffing company that maintains offices in Kansas, Missouri, Texas, and Florida.  Defendant recruits and assigns workers to companies engaging in manual labor projects, including fire and water restoration, solar energy, manufacturing, construction, and other general labor.

Plaintiff Charles Cox worked for Defendant from September 2020 to January 2021, in New York, South Carolina, Iowa, and Louisiana.[15]  At each project he performed manual labor,

---

[9] *See, e.g.*, *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1263 (D. Kan. 2015) (quoting *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB, 2014 WL 2885363, at *3 (D. Kan. June 25, 2014)).

[10] *See, e.g.*, *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 908 (D. Kan. 2021); *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 434 & n.4 (D. Kan. 2007).

[11] *Thiessen*, 267 F.3d at 1102–03.

[12] Doc. 1

[13] Doc. 27-1 at 4–24.

[14] Doc. 31-2 at 2–8.

[15] Doc. 31-2 ¶ 22.

primarily involving demolition or fire and water restoration.  Plaintiff was classified as non-exempt and made approximately $12–$16 an hour, plus overtime.

Defendant recruited Plaintiff from its office in North Carolina and then transported him, along with other workers, to the worksites in company vans or busses.  The worksites were frequently hundreds of miles away from the office, meaning that Plaintiff spent dozens of hours traveling in the vans.  Plaintiff was not paid for this travel time.  Plaintiff was unable to leave any project early since he used Defendant's transportation to get to the project sites.

Defendant provided hotel rooms to the workers for the duration of the projects.  Plaintiff was often assigned to hotel rooms with three other workers, which required workers to share beds.  Defendant routinely deducted lodging expenses or other penalties related to the hotel rooms from Plaintiff's pay.  Plaintiff was afraid to directly challenge these deductions due to the captive relationship between him and Labor Source.  Each week, these deductions amounted to $50–$75 of lost income.

Defendant does not send managers to oversee the project sites.  Instead, when Defendant assigns a crew to a project, it designates a "crew lead" to track the hours that crew members work.  Defendant pays its manual laborers by loading funds onto prepaid debit cards according to the number of hours crew leads report.  Defendant does not routinely issue itemized wage statements.  Though crew leads are responsible for submitting timesheets to Labor Source, their primary duties are performing manual labor alongside the crew members.

At each project, Plaintiff was required to use a daily timekeeping system that consisted of paper timesheets or electronic timesheets on iPads.  Plaintiff was not allowed to enter his own hours onto the timesheets.  Instead, a crew lead uniformly filled out the sheets for the entire crew, and required Plaintiff to sign his timesheets even if the times reflected inaccurate hours.

Plaintiff was often required to sign the timesheets at the beginning of the day, and then was not allowed to verify that the end time was accurate at the end of the day.  During one of his jobs, Plaintiff worked upwards of 14–15 hours per day, but his timesheets stated that he worked 10–hour days.  At other worksites, Plaintiff routinely worked between 12–15 hours per day, but the timesheets would reflect that he worked only 10 hours per day.  Per week, these inaccurate hours resulted in Plaintiff losing dozens of hours of compensable work.  This meant that Plaintiff was also deprived of hundreds of dollars of overtime premiums per week.

Plaintiff and opt-in Plaintiffs collectively worked on forty-two projects in seventeen states and the District of Columbia from September 2019 to July 2021.[16]  Each opt-in Plaintiff alleges that they were subject to the same practices of underreporting hours and improper deductions at every project.  They also allege that they have spoken to other manual laborers at worksites, and that other workers have experienced identical practices at every project site.  Plaintiff, and several of the opt-in Plaintiffs, reported these deductions and the errors in the timesheets to Labor Source management many times.  Labor Source took no action to correct the challenged behaviors.

Plaintiff alleges that Labor Source willfully violated the FLSA by underreporting hours and making improper deductions from employees' wages.  Based on the uniformity of their experiences, as well as their conversations with other workers, Plaintiff and the opt-in Plaintiffs allege that Labor Source's pay practices are uniformly applied across the country.

## III.    Discussion

### A.    Conditional Certification

---

[16] These states are New York, South Carolina, Iowa, Louisiana, North Carolina, Virginia, Missouri, Idaho, Massachusetts, New Hampshire, Maine, Illinois, Pennsylvania, Maryland, New Jersey, Texas, Tennessee, and the District of Columbia. *See* Doc. 31-2 ¶ 23.c–i.

Plaintiff moves to conditionally certify the following class of individuals:

> All persons who are, have been, or will be employed for Defendant as manual laborers and other individuals with similar job titles within the United States at any time during the last three years through the entry of judgment in this case, except those who worked exclusively in North Carolina.[17]

In support, Plaintiff provides his own declaration and six declarations from opt-in Plaintiffs.

Defendant opposes Plaintiff's motion, asserting that Plaintiff's proposed class is too disparate for conditional certification. Defendant argues that Plaintiff cannot show that members of the putative collective are similarly situated because no single practice, policy, or plan binds them all together. Defendant concludes by stating that, if the Court finds substantial similarity, it should be limited to persons who worked on projects for the same Labor Source customers as the opt-in Plaintiffs.

As stated above, at this stage, the Court does not consider the merits of Plaintiff's claims and does not weigh evidence. In fact, "[t]he Tenth Circuit does not require any quantum of evidence to be produced at the notice stage."[18] Therefore, the Court considers the allegations in Plaintiff's Complaint and the instant motion, as well as the documentation attached thereto, to determine if there are substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.[19] The Court concludes that Plaintiff has satisfied his lenient burden for conditional certification.

---

[17] Doc. 58 at 1. Labor Source employees who worked exclusively in North Carolina are ineligible to join this collective action because they are subsumed within a pending action in the Eastern District of North Carolina. *See Speight v. Labor Source, LLC*, 4:21-cv-00112-FL (E.D.N.C. filed Aug. 12, 2021).

[18] *McCoy v. Over Easy Mgmt., Inc.*, No. 14-cv-01309-EFM, 2015 WL 1578627, at *3 (D. Kan. Apr. 9, 2015).

[19] Both parties refer to other pending suits filed against Labor Source to support their arguments. But these other suits are largely irrelevant to this Court's conditional certification inquiry. In *Speight*, the Eastern District of North Carolina conditionally certified a limited collective of North Carolina employees because the court had only specific jurisdiction over Labor Source, and therefore did not have a close enough connection to the non-North Carolina plaintiffs' claims. *Speight v. Labor Source, LLC*, 4:21-cv-00112-FL (E.D.N.C. filed Aug. 12, 2021). Here,

1.        **Similarly Situated**

Defendant asserts that Plaintiff has not identified a single, common policy or plan of Labor Source that violates the FLSA.  Defendant also challenges Plaintiff's evidence as categorically insufficient to meet the "substantial allegations" threshold for conditional certification.

Plaintiff and the opt-in Plaintiffs uniformly allege that, at every worksite, their hours were artificially reduced and improper deductions were made from their wages.  Each also asserts that it is Labor Source's policies and practices that control their pay, as evidenced by the fact that they directed their complaints to Labor Source offices.  Defendant disputes the allegation that it has control over timesheet practices, stating that it relies on crew leads to ensure accurate recording of hours.  But Defendant's arguments about control over timesheets, which may or may not ultimately prevail, are premature at this notice stage.[20]  In fact, many of Defendant's arguments are premature.[21]  The Court need only decide whether Plaintiff has proffered sufficient evidence to demonstrate that the putative collective is similarly situated.  Plaintiff and opt-in Plaintiffs' seven declarations satisfy that burden.

---

the Court has general jurisdiction over Labor Source in Kansas.  In *Murphy*, the District of Minnesota conditionally certified a collective of only Minnesota employees following the parties' stipulation.  *Murphy v. Labor Source, LLC*, 0:19-cv-01929-ECW (D. Minn. filed July 23, 2019).  The case quickly moved into settlement and is now pending a final settlement approval.  Here, there is no stipulation as to the scope of the collective action.  Neither case is relevant to the issues before this Court.

[20] *See Prince v. Kansas City Tree Care, LLC*, No. 19-2653-KHV, 2020 WL 3217103, at *3 (D. Kan. June 15, 2020) (citing *Geer v. Challenge Fin. Invs. Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *2 (D. Kan. Oct. 17, 2005)).

[21] Defendant's arguments regarding the individualized inquiries that may come to dominate this collective are decidedly improper at the notice stage, as courts in this district have routinely held.  *See, e.g., James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 920 (D. Kan. 2021); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006); *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 435 (D. Kan. 2007); *McGlon v. Sprint Corp.*, No. 16-CV-2099-JAR, 2016 WL 7103949, at *5 (D. Kan. Dec. 6, 2016).

Defendant points to Labor Source's corporate policies which prohibit the type of misconduct that Plaintiff alleges, and asserts that any misconduct resulted from individualized breaches by clients.  But it would be nonsensical to expect Labor Source's corporate policies to expressly require illegal pay practices. "Surely, no one would expect defendants or any other company to inscribe as much onto a plaque for all of the world to see."[22]  Plaintiff alleges a common failure—that he and the putative class members were together the victims of an illegal approach to FLSA-mandated wage policies.[23]  "In a sense, there *is* a common policy.  It's [Defendant's] alleged common failure to follow the law."[24]

Defendant characterizes the alleged misconduct as actions of rogue crew leads or clients, which cannot be attributed to Labor Source as a company.  But Plaintiff's allegations go far beyond misconduct attributable to rogue actors.  Plaintiff alleges that Defendant has a company-wide practice of failing to pay proper minimum wage and over-time premiums.  Plaintiff has personally experienced the same pay practices across four different states.  He substantiates his allegations with declarations from opt-in Plaintiffs who have collectively been subject to the same pay practices in seventeen states and D.C.  This is sufficient to raise an inference that the failures are company-wide.

### 2.    Class Definition

Defendant argues that, even if Plaintiff is similarly situated to the opt-in Plaintiffs, the collective should be restricted to workers who worked on the same projects as them.  In other words, Defendant argues that Plaintiff and the opt-in Plaintiffs have no personal knowledge of the practices at worksites other than the ones each has personally worked at.  However, the Court

---

[22] *James*, 522 F. Supp. 3d at 913.

[23] *See id.* at 909.

[24] *See id.* at 913.

finds that Plaintiff and the opt-in Plaintiffs have made substantial allegations based on personal knowledge that Labor Source's practice of under-reporting hours and making improper deductions was company-wide.

Plaintiffs who seek conditional certification of company-wide collectives but offer no "firsthand knowledge of practices in other units or locations" must be denied.[25]  In that context, courts have frequently limited the scope of proposed collectives under the FLSA.[26]  However, when a plaintiff has personal knowledge about the conditions at numerous locations of a company, courts more readily find that the plaintiff's allegations are substantial.[27]

Here, Plaintiff does not rely on speculative assertions.  Along with his own declaration, he submits six declarations from manual laborers who collectively worked for Labor Source in seventeen states and D.C.  Moreover, the factual circumstances of this case weigh in favor of nationwide conditional certification.  The putative collective is composed of itinerant, manual laborers, who work for brief periods of time in different job sites across the country.  They are uniquely capable of possessing "first-hand information about [D]efendant's actions at numerous work sites."[28]  This stands in marked contrast to a worker who has only worked for a defendant

---

[25] *See Pegues v. CareCentrix, Inc.*, No. 12-2484-CM, 2013 WL 1896994 at *3 (D. Kan. May 6, 2013).

[26] *See id.*, at *4, (denying nationwide collective and conditionally certifying a smaller collective of only plaintiff's working group); *Blancarte v. Provider Plus, Inc.*, No. 11-2567-JAR-KGG, 2012 WL 4442642, at *3 (D. Kan. Sept. 26, 2012) (declining to conditionally certify a company-wide collective since "Plaintiff does not name a single co-worker who shares his concerns, or one willing to . . . opt-in to the litigation."); *Bowling v. DaVita, Inc.*, No. 21-cv-03033, 2023 WL 4364140, at *7 (D. Colo. July 6, 2023) (declining to conditionally certify a nationwide collective where plaintiff made "no factual allegations, beyond conclusory assertions, that would permit the Court to conclude that he has personal knowledge of the experiences of DaVita employees working in any other state.").

[27] *See Sharp v. CGG Land (U.S.) Inc.*, No. 14-CV-0614, 2015 WL 222486, at *5 (N.D. Okla. Jan. 14, 2015) (denying the defendant's request for a geographical restriction where plaintiff provided "first-hand information about defendant's actions at numerous work sites"); *McGlon v. Sprint Corp.*, No. 16-CV-2099-JAR, 2016 WL 7103949, at *4 (D. Kan. Dec. 6, 2016) (inferring that there was a company-wide policy where four other employees were subject to the same "unwritten policy of recording only forty hours despite work in excess of those hours."); *Deakin v. Magellan Health, Inc.*, 328 F.R.D 427, 434–35 (D.N.M. 2018) (granting conditional certification of a nationwide class on the basis of declarations from employees in five states who each attested that they had personal knowledge of uniform, nationwide policies).

[28] *See Sharp*, 2015 WL 222486, at *5.

9

in one location, and then professes to have company-wide knowledge.[29]  Here, "[t]he geographical diversity and commonality of these allegations support a reasonable inference that the same violations occurred at other . . . locations nationwide."[30]

Defendant contends that more evidence is necessary to conditionally certify a nationwide collective action.  But the Court declines to impose a heightened evidentiary standard merely because the Defendant is a national company.  Plaintiff has satisfied his lenient burden for the notice-stage of conditional certification.

However, Plaintiff's proposed collective definition is too broad with respect to the time period it describes.  The proposed collective includes all persons who "are, have been, or *will be* employed by Defendant."[31]  Neither party specifically addresses the fact that Plaintiff's proposed class would include workers who have not yet worked for Defendant, but the Court is not aware any other FLSA collective that included this future employment language.  The Court finds such language to be inappropriate.

Since Defendant has an obligation to send Plaintiff a list of all putative collective members, this future employment language would impose an obligation on Defendant to continue updating the list throughout the opt-in period.  The Court finds such a continuing obligation to be overly burdensome and potentially dilatory.  Defendant can only send Plaintiff information about current and former employees; that is the only information in Defendant's possession.  Defendant is ordered to do so within the next thirty days, after which Defendant's obligation ends.  The Court strikes the language "or will be employed" from the proposed collective definition.

---

[29] *See Pegues*, 2013 WL 1896994, at *3.

[30] *See Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d. 1097, 1126 (D.N.M. 2017).

[31] Doc. 26 (emphasis added).

Plaintiff also includes the language "through the entry of judgment in this case."[32]  As written, this language appears to include putative plaintiffs who work for Labor Source at any point until the entry of judgment.  This is inappropriate because there is a limited opt-in period for putative plaintiffs to join the collective, beginning on the date that notice issues.  Therefore, the Court strikes the phrase "through the entry of judgment in this case."

Accordingly, the Court finds that Plaintiff's proposed collective definition should be modified as follows:

> All persons who are, or have been employed by Defendant as manual laborers and other individuals with similar job titles within the United States at any time during the last three years, except those who worked exclusively in North Carolina.

## B.    Notice Form

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."[33]  Plaintiff has submitted a proposed notice and consent form with his motion to conditionally certify.[34]  Defendant objects to Plaintiff's proposed notice on several bases and requests that the Court either modify the notice or order the parties to meet and confer.

The Court is mindful that "[u]nder the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary."[35]  Therefore, while the Court addresses Defendant's specific objections

---

[32] *Id.* (emphasis added).

[33] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[34] Doc. 27-1 at 130–33.

[35] *Prince v. Kansas City Tree Care, LLC*, No. 19-2653-KHV, 2020 WL 3217103, at *3 (D. Kan. June 15, 2020) (citation omitted).

to Plaintiff's proposed notice below, it resolves only the disputes that both parties sufficiently briefed.  The Court orders the parties to meet and confer on the specific objections that the Court does not resolve below.

### 1.    Relate-back Date

Both parties agree that the beginning date on the notice should be amended to three years before the date of distribution of the notice.  Therefore, notice will only be sent to individuals who worked for Labor Source within three years before the date that notice issues.

### 2.    Definition of Collective

Defendant objects to the language Plaintiff uses to define the collective.  In the second section describing what the suit is about, the notice states in part that "[y]ou are eligible to join this lawsuit if you worked hours without pay including more than 40 hours in any week without overtime pay and/or suffered illegal wage deductions."[36]  Defendant specifically objects to two omissions: 1) clear instruction that only hourly, non-exempt employees are eligible, and 2) explicit language excluding employees who worked exclusively in North Carolina.

Plaintiff argues that the language "manual laborer or other like hourly employee,"[37] located in the first section explaining why putative opt-in plaintiffs received the notice, sufficiently defines the collective.  Plaintiff also asserts that there is no need to explain that North Carolina plaintiffs are excluded because those employees will not receive the notice.

The Court will not disturb Plaintiff's proposed language unless it is necessary.[38] Defendant makes no specific argument for why the phrase "non-exempt" is necessary to ensure that putative plaintiffs understand whether they are eligible to join the collective.  Plaintiff insists

---

[36] Doc. 27-1 at 130.

[37] *See id.*

[38] *See Prince*, 2020 WL 3217103, at *3.

that his language is sufficient, and the Court is confident that Plaintiff will not allow ineligible, exempt employees to join the collective. The Court denies Defendant's request to insert language that only non-exempt employees are eligible to join to the collective. The Court also denies Defendant's request to add language excluding the North Carolina employees. Plaintiff need not explicitly exclude the North Carolina employees from the collective definition because those employees will not receive the notice. Therefore, the requested statement could risk confusion.

### 3.      Labor Source's Position

Defendant objects to Plaintiff's treatment of Labor Source's position in the notice form: "Labor Source contends that it properly paid Manual Laborers so Labor Source does not owe any minimum and/ or overtime wages."[39] Specifically, Defendant argues that the language is not sufficiently balanced because it does not include Labor Source's defenses. Plaintiff responds that the current language is sufficient. However, the Court agrees with Defendant that the current language is not balanced, given that the preceding sentence lists Plaintiff's position in more detail. The Court grants Defendant's request to include its defenses.

### 4.      Obligations of Potential Opt-In Plaintiffs

Both parties agree that Plaintiff should insert a sentence stating that opt-in plaintiffs may have to participate in discovery, depositions, and/ or trial.

### 5.      Taxable Recovery

Defendant argues that a sentence should be inserted stating that any recovery would be subject to tax consequences. While Defendant cites a decision from this district requiring such

---

[39] Doc. 27-1 at 130.

language,[40] Defendant makes no specific argument about why the statement is necessary here. Statements regarding tax consequences in the initial notice form are by no means routine and the Court declines to require such a statement without a specific showing that it is necessary.[41]

### 6.    Alternative Representation

Defendant challenges Plaintiff's language regarding putative opt-in plaintiffs' right to proceed *pro se* or be represented by alternative counsel.  Plaintiff's proposed language is "[i]f you do not wish to join the lawsuit, you are free to take action on your own or do nothing."[42] However, the notice also states that to join the lawsuit as a plaintiff, the individual should "fill out the enclosed Consent to Join."[43]  The Court finds that this risks confusing putative plaintiffs by conflating participating in the lawsuit with being represented by Plaintiff's counsel.  The Court grants Defendant's request to insert language that expressly provides that putative plaintiffs are free to select their own counsel or proceed *pro se*.  This would not be duplicative and would ensure that putative collective members are informed of their rights.

### 7.    Text and Email Messages

The Court orders the parties to confer on the form of the proposed text and email messages sent to putative opt-in Plaintiffs with the Notice.  Plaintiff's proposed language is:

> "Dear Current or Former Labor Source Worker:
>
> Attached is the Court-authorized Notice regarding a collective action lawsuit against Labor Source which seeks to recover minimum wage and/or overtime pay for working in excess of 40 hours in a workweek.  You are receiving this message because Labor Source's records indicate you are eligible to participate in this collective action lawsuit and your rights may be affected by its

---

[40] *Mayhew v. Angmar Med. Holdings, Inc.*, No. 18-2365-JWL, 2019 WL 6255109, at *4 (D. Kan. Nov. 22, 2019).

[41] *See id.*, (noting that "the few courts that have addressed this issue are split.").

[42] Doc. 27-1 at 130.

[43] *Id.*

> outcome.  The attached Notice explains the steps you need to take
> if you want to join.  You can review and sign the forms to join the
> case here «hyperlink».
>
> To learn more, you can call the workers' attorneys at 817-908-
> 9861 or 877-783-4729."[44]

While the messages cannot be expected to relay every element of the notice form, they must remain neutral.  Specifically, the parties should confer on three matters.

First, the parties must remove language that this is a "Court-authorized Notice."[45]  The Supreme Court has counseled that in overseeing the notice process, trial courts "must be scrupulous to respect judicial neutrality . . . [and] must take care to avoid even the appearance of judicial endorsement of the merits of the action."[46]  To that end, judges in this district consistently direct the parties to remove references to court authorization in collective action notices.[47]  Out of an abundance of caution, the Court agrees with Defendant that this reference to the Court should be removed or reworded to indicate the Court's neutrality.

Second, Defendant challenges the absence of any statement of Defendant's position.  The Court grants Defendant's request to insert a brief statement of Labor Source's position following the statement of the case.

Finally, Defendant requests to remove the sentence prompting workers to call Plaintiff's attorney as an inappropriate solicitation prior to putative plaintiffs reading the notice.  Plaintiff

---

[44] The quoted language is Plaintiff's proposed email message.  The proposed text message differs only in the first sentence, stating that the notice is included "[i]n the link below" instead of "[a]ttached." *See id.* at 133.

[45] *See id.*

[46] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

[47] *See, e.g.*, *Prince v. Kansas City Tree Care, LLC*, No. 19-2653-KHV, 2020 WL 3217103, at *3 (D. Kan. June 15, 2020); *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at *7 (D. Kan. Sept. 24, 2013); *Kuri v. Addictive Behav. Health Change Grp.*, *LLC*, No. 16-CV-2685-JAR-JPO, 2017 WL 5273726, at *3 (D. Kan. Nov. 13, 2017).

did not respond to this objection.  Absent an argument from Plaintiff about why such a sentence is necessary, the Court errs on the side of caution and directs Plaintiff to remove this language.

### 8.    Notice Period

Plaintiff proposes that putative plaintiffs be required to file their consent forms ninety days from the date the notice is mailed.  Plaintiff states that a ninety-day opt-in period is necessary due to the itinerant nature of Labor Source workers, who are away from home for weeks at a time.  Defendant objects to the length of the period but provides no specific rationale for requesting to reduce it to sixty days.  District courts within the Tenth Circuit regularly find opt-in periods up to ninety days to be reasonable.[48]  Therefore, the Court grants Plaintiff's request for a ninety-day opt-in period.

### 9.    Method of Notice and Reminder

Defendant challenges Plaintiff's request to send notice by text message as duplicative of the notice by mail and email.  Plaintiff responds that the putative collective members are itinerant workers who are frequently away from home for weeks at a time, and therefore, notice by text is the most reliable means of reaching them.  Such information is commonly used to reach putative class members and Defendant offers no specific reason why it would be prejudicial or inappropriate here.[49]  Therefore, the Court grants Plaintiff's request for notice by mail, email, and text message.

---

[48] *Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079, 1131 (D.N.M. 2017) (citations omitted); *Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011) (describing a sixty-day opt-in period as "unusually short").

[49] *See, e.g.*, *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (allowing notice via text message and email because "the law is on Plaintiff's side."); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 436 (D.N.M. 2018) (affirming that "notice by email and text is reasonable in today's mobile society and . . . these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved.").

The Court also approves Plaintiff's request for a reminder notice thirty days prior to the close of the opt-in period.  Single reminder notices such as this one are typically permitted, and Defendant offers no reason why they should not be in this case.[50]

### 10.    Contact Information and Time for Defendant to Comply

In his motion, Plaintiff asks that the Court order Defendant to provide Plaintiff's counsel with the names, addresses, dates of employment, job titles, email addresses, and telephone numbers of all individuals in the putative collective.  Defendant challenges Plaintiff's requested information as overbroad but makes no specific objection to any of the requests.  This kind of information is commonly used to locate putative class members.[51]  Absent a specific challenge to any of the requested types of information, the Court grants Plaintiff's request for Defendant to produce the names, addresses, dates of employment, job titles, email addresses, and telephone numbers of all putative collective members.

Defendant requests thirty days to provide Plaintiff with this information and Plaintiff does not oppose this timeline.  Therefore, the Court grants Defendant's request for a thirty-day period to produce the Class List.

### 11.    Meet and Confer

Except as specifically addressed above, the Court approves the Notice proposed by Plaintiff.  The Court directs Plaintiff to make the requisite revisions and provide Defendant with the corrected notice form on or before October 17, 2023.  The Court also finds that a short meet-and-confer period is appropriate to resolve the remaining disputes over the content of the text

---

[50] *See Nelson v. Firebirds of Overland Park, LLC*, No. 17-2237-JWL, 2018 WL 3023195, at *7 (D. Kan. June 18, 2018); *Mayhew v. Angmar Med. Holdings, Inc.*, No. 18-2365-JWL, 2019 WL 6255109, at *4 (D. Kan. Nov. 22, 2019).

[51] *See Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1265 (D. Kan. 2015) (granting plaintiffs' request for names, addresses, telephone numbers, dates of employment, and location of employment).

and email messages attaching the Notice.  The parties are directed to meet and confer solely about the issues raised above in the Court's analysis of the text and email messages and file a joint proposed notice and consent form to the Court for approval on or before October 24, 2023.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for FLSA Conditional Certification and Notice (Doc. 26) is **granted in part**.  The Court conditionally certifies a collective action for the following class of persons:

> All persons who are, or have been employed by Defendant as manual laborers and other individuals with similar job titles within the United States at any time during the last three years, except those who worked exclusively in North Carolina.

**IT IS FURTHER ORDERED BY THE COURT** that the parties are directed to meet and confer about the notice language discussed above.  The Court orders the parties to file a revised joint proposed notice and consent form to the Court for approval no later than October 24, 2023.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant shall provide Plaintiff with a list of putative class members' names, addresses, dates of employment, job titles, email addresses, and telephone numbers to facilitate Plaintiff disseminating notice by mail, email, and text message.  Defendant shall provide Plaintiff with this information no later than November 9, 2023.  Plaintiff's request for a reminder notice thirty days before the end of the notice period is granted.

**IT IS SO ORDERED.**

Dated: October 6, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE